Ms. McDonnell is here for Harrison, Ms. Lyles is here for Macy's, and Ms. McDonnell, you may begin when you're ready. May it please the Court, I am Esther McDonald. I represent Mr. Harrison, who is with us here in the courtroom today. Mr. Harrison was a temporary seasonal employee with Macy's during the 2015 and 2016 winter holiday seasons. As part of his employment contracts for each of those periods, he agreed to an arbitration clause which required him to arbitrate workplace disputes arising out of or relating to his employment or cessation of employment. After his employment ended each of those years, many months later he applied for other positions with Macy's and he was denied those positions. His complaint below alleges failure to hire claims for discrimination and retaliation. He brings those claims under Title VII and Section 1981. After he filed his complaint, Macy's moved to dismiss and to compel arbitration, arguing that his failure to hire claims were covered under the arbitration clauses of his two prior employment contracts. The Court accepted that and granted the motion to dismiss. We believe that ruling was in error for several reasons. First, the scope of the arbitration clauses does not include his claim. This is a simple matter of interpretation. The plain language of the arbitration clauses states that they apply to claims arising out of or relating to employment or cessation of employment. Employment, the general definition is the act of being employed or the, I'm sorry, the status of being employed or the act of employing somebody. His claims that Macy's failed to hire him have nothing to do with his actual employment with Macy's. Go ahead. You can go. Go ahead. If he had still been employed by Macy's as a seasonal employee at the time that he sought and was denied full-time employment, would that claim fall within the arbitration contract? Well, I think the first point is he wasn't employed then, so that is not an issue the Court needs to reach. But I don't, I have not thought about that. I think there would be an argument that they were not because the purpose of an arbitration clause is to implement the contract. And so it's the purpose of implementing that contract, not to transcend it and make the arbitration clause become the be-all, end-all contract. And so that's why in Lytton, even though the Court, the Court is clear, the Supreme Court, and says that generally when a contract terminates, it terminates. Nothing survives it. But it recognizes an exception, which is a, well, not an exception, a presumption, a narrow presumption that arbitration clauses will survive post-expiration, but only for disputes that arise out of the contract. And so in the hypothetical that you proposed, Judge Grant, that claim would not arise out of that particular contract. And so I think it would not be covered there. Well, Macy's says that his claim, this retaliation claim, is based in part on statements that were made by other employees during his first employment period and based on information that was revealed to Macy's during his seasonal employment. What do you have to say about that? That that's merely, that's not a relevant, the fact that Macy's learned it during his employment is not a relevant fact. That's just a fortuitous fact. If he had not been employed and Macy's had learned those facts. It doesn't support his claim that the dispute was, arose in connection with his prior employment with Macy's? It didn't arise under those contracts, no. So his claim for retaliation is that Macy's failed to hire him and that Macy's decision not to hire him was based on the fact that he had sued Belk and that he had filed an EEOC complaint. That decision was made when he applied for employment and then was denied. That decision was not made back when those employees said something to him. The decision was made post-employment. Would the answer be different if there was evidence that the person that he told about the EEOC complaints had emailed the hiring manager at that time and said, hey, this guy's trouble. Make sure never to hire him for seasonal employment again. Would that change? I think the oddity we have here is that the worse the alleged behavior of Macy's, the more likely that your client gets put into his less favored forum, which is a pretty perverse result. I guess the question is, if the decision is made at the time of his seasonal employment, if the decision is made to never employ him again after the expiration of that seasonal employment, does that mean that there's a sufficient connection to the earlier contractual agreement? So if I understand correctly, you're asking if while he was employed, Macy's had decided we're never going to hire him again. Right. We won't take action now, but later if he applies, he's on the outs because of these claims he's made. I think my point is similar to before that there's no evidence that that's what's happened here. And then second, that no, still the decision not to hire him, at that point he hasn't applied for the position. He did not apply for the positions until September 2016 and May 2017. And so the decisions not to hire him for those two positions were not made until after he applied for those positions. I agree. I agree in this case there's no evidence of what I'm suggesting. But since we have to set out a rule that's going to apply in a range of cases, let's say it's an entirely different person, right, not your client. If someone is working a seasonal job and for a retaliatory reason, the employer decides at that moment while the person is still employed in the seasonal role, we are never going to hire this person for a future seasonal role. Is that a dispute that would be arbitrable under the contract that's in place while the employee is employed? Or is that outside the bounds? I think that would be outside the bounds because at that point there is no dispute because the individual hasn't applied. And I don't think we want to impose liability on a company, for instance, for making a bad decision that they never execute. Down the road the person may apply and the company maybe has better counsel at that point that says this is not a good reason we must hire them. So I think you have bad intent during the employment there, but no dispute has arisen yet because the individual has not yet applied for employment. And again, I don't think we would want to impose liability for having a thought but not actually taking an adverse action against the individual based on that thought. Judge Wilson. As he said in his brief, he makes reference to various supervisors at Macy's, including the store manager, Robert Robin Goins, and the human resource manager, Tony Jones, and a sales manager, Cynthia Davis Bennett, as having conversations and interactions among themselves about his 2016 EOC complaint. How does that factor into our analysis in determining whether or not this dispute arises out of his employment contract containing that arbitration clause? So his claim is failure to hire, and it's when did that retaliation occur? So Macy's concedes that his claims for discriminatory failure to hire fall outside the arbitration clause. And so the failure to hire occurred at the same time. Whether it was discriminatory, retaliatory, or both, it occurred at the time he wasn't hired. And so if one falls outside, both should fall outside. But to go further to your point, Your Honor, the fact that those statements, what matters is those statements evidence knowledge. It doesn't matter that he was employed at the time. He could have been a non-employee when those statements were made, and they would still be evidence. So his claim is not, as Litton would say, a direct foreseeable result of the employment. So Litton says for it to arise under the contract, there must be a direct relationship between the contract and the performance of duties. And so his claim that you retaliated against me by failing to hire me does not involve the performance of duties under that contract. And his claim is not a foreseeable result of the performance of duties under that employment contract, under either employment contract. So the first point was that it's not covered within employment and cessation of employment. Again, the Doe, I would point, Your Honor, to Doe versus Princess Cruz lines, the court that indicated that relating to arising under language is limiting. And I may have gotten Litton and Doe confused there, it just occurred to me, but it has to be a foreseeable result. And then our last point, so our first point was it's not within the scope. The second point, which we've discussed here, was that it does not fall within Litton's narrow presumption. And then the last point is that it was terminated. His contract's terminated when his employment ended. And the Litton presumption does not apply if it is expressly or by clear implication negated. And the documents state that after 60 days, a party is not covered. So it says a party remains covered if at the end of their employment they are reemployed within 60 days. But if more than 60 days passes, the party has to, again, agree to arbitrate. And we see that in Mr. Harrison's case because he was presented with another arbitration agreement to sign. Common sense dictates that would not have been at all necessary had he been covered before. All right, thank you, Ms. McDonald. We'll hear from Ms. Liles. May it please the Court, Lateek Liles for the Appellee Macy's. Before I get to the retaliatory failure to hire claims, it's really important to address the fact that appellate's framing of this issue before the Court is inaccurate. In his supplemental reply brief, appellee claims that the only remaining issues before this Court are to decide whether or not the retaliatory failure to hire claims fall outside the scope of the arbitration. That is not correct. In the complaint, the appellate makes two allegations of failure to promote that occurred while he was employed by Macy's during both stints of his employment. If you look at paragraphs 8 through 10 of the complaint, he alleges that while he was employed by Macy's in January of 2016, Macy's failed to promote him from a seasonal position that he was currently working to a permanent position due to race discrimination and gender discrimination. All of that occurred while he was still employed by Macy's. He's alleging that they failed to promote him from a seasonal to a permanent position. That falls squarely within the scope of the arbitration agreement as he was still an employee at the time, and he was alleging that he wasn't promoted for a position that he should have been promoted for allegedly while he was still an employee. Go ahead. I think I agree with you. Excuse me. Why don't you go ahead because I can't talk at the moment. So you're saying those two claims are still live for arbitration as well as you're arguing that the retaliation claims are still live for arbitration. But Macy's has now conceded, apparently, after taking a pro se plaintiff through an entire district court litigation process, that his claims of failure to hire for race, failure to hire for gender, failure to hire for age, failure to hire for national origin, that all of those now, after all, okay, fine, those are in federal court as opposed to arbitration that we've been fighting on for so long. Let me just briefly interject. Once we received notice from this court that there was supplemental briefing argument, Macy's reached out to the pro se plaintiff through his attorney and agreed with him or at least acknowledged that we know now that there are some claims, contrary to our initial belief and contrary to the belief of the district court, that do fall outside of the arbitration agreement. We also think that there are some claims that still fall inside of the arbitration agreement. But so that we can have efficiency and to avoid further litigation, we will agree to have all claims, even though we agree that some fall outside of the arbitration agreement, to remain in district court. The pro se plaintiff, through his attorney, denied one. Can you see why we would find that concerning that Macy's would only come to that conclusion once the plaintiff had a very capable lawyer to help him raise those claims? As we stated in our brief, and as the district court agreed, we were initially under the belief that all of the claims fail within the arbitration agreement. It wasn't until after, upon receiving the additional notice from this court, it was not until after that that we agreed that there were some claims that fell outside of the arbitration agreement. But the district court agreed with us initially. I mean, that's why the ruling was in our favor, that all of the claims fell outside of the arbitration agreement. So it was not just Macy's, but it was actually the district court as well. Yes, Your Honor. Just the discrimination claims, right? No retaliation claims. That's my understanding. Correct. Is my understanding just incorrect? The discrimination claims fall outside of the arbitration agreement? Correct. It's just the retaliation claim that you say falls within it? The retaliation as well as the failure to promote. So while he was still employed by Macy's, if you look at paragraphs 8 through 10, and then again in 28 through 29, while he was still employed by Macy's during both stints of his employment, he alleged that Macy's failed to promote him. And those claims still fall within the arbitration agreement and should be compelled to arbitration. I hope that Macy's will have a similar realization for any comparable plaintiffs in other cases. Well, I mean, again, Your Honor, we reached out to the plaintiff to try to put all these claims in district court. All the supplemental briefing that has occurred after we received notice from you that there was to be supplemental briefing was because the plaintiff did not want to litigate for whatever reason, even though that was the initial relief he was requesting. He didn't want to litigate all the claims in district court. He wanted to fight this. We didn't. We agreed to consent to have all of the claims, even though it is blatantly obvious that some of these fall within the scope of the arbitration agreement. We agreed to litigate all the claims in district court for the benefit and efficiency of both parties and for the efficiency of the court. The pro se plaintiff denied that acquisition by us. Yes, Your Honor. Let me go back to where I tried to talk before. And my question was very similar to Judge Grant's, but I want to take it a little bit further. I sympathize with Macy's and with the district court. The complaint, like many pro se complaints, is kind of all over the place. Yes, Your Honor. Before you started talking, my understanding from the briefs was that the only cases that Mr. Harrison is still pursuing were the cases dealing with the failure to rehire him, not any failure to promote him or extend his employment while he was there. Now, I agree with you that any claim that they failed to give him a permanent job while he was working there is probably within this arbitration agreement. But I thought that claim was by the board and that there really wasn't such a claim, that the only actual claim being pursued. So I guess my question is, do you want to declare victory on any claim dealing with his being reassigned or given a permanent position while he was there? Or I guess maybe I'll ask Ms. McDonald when she stands back up whether I've got it right. I mean, if there's still a claim for something that happened while he was employed. So it's unclear to me because the operative complaint at this point is still the one on record and it contains claims for failure to promote. So there hasn't been any briefing. Or at least allegations about failure to promote. Allegations, correct. There has not been any briefing by the plaintiff that he's dropping these failure to promote claims. I know she hasn't, it basically hasn't been addressed either way. So for purposes of this, we are assuming that those claims still exist. And if they do, then they would be compelled to arbitration. All right. And then my other question I was going to ask you, I know you tried to give up on this and take everything to court. Makes sense. At some point it just gets expensive to keep fighting for reasons I don't understand. We're still fighting anyway. So despite your effort to give up, it didn't work. So where are you now? I mean, look, if we agree with you that some of these claims are arbitrable, then you go back and you've got a lawsuit pending in the district court. You've got an arbitration pending. Seems to me your effort to save money is going backwards. Now you've got two proceedings instead of one. And Mr. Harrison is a determined litigant. He'll litigate with you as long as you litigate. That was part of the reason why we went back and tried to litigate and get everything in district court. It's his decision. He didn't want to do that. So we're here in two different forms. So if you tell us right now that you abandon your reliance on the arbitration agreement, you waive your right to arbitrate, then we write a two-sentence opinion and we're done. I mean, that was the initial thought process when we went back to the plaintiff is that we were going to waive our right to arbitrate the claims. Is that what you still want? I mean, if you just stand there and say we waive our right to arbitrate, aren't we done? Yes, and that is exactly what we wanted to do. We wanted to waive our right to arbitrate even though we knew that there were claims that fell outside of the agreement, including the failure to moat and failure to hire. We were waiving our right to arbitrate those claims so that we could remain in one tribunal, which was most efficient for both parties and could have avoided this argument here today. You tried to do that before, and what you're telling me is that is still what you want to do. Yes, that would still be our preference, yes. All right. Okay, so I'm a little confused now. The retaliation claim that Macy's failed to hire me for a permanent position after I left constitutes retaliation. What's the status? What does Macy's say about whether or not that claim should be arbitrated? That claim should have been arbitrated or should be arbitrated. As the appellant has stated in her brief, the material events that form the basis of that retaliation claim is, one, the fact that the plaintiff engaged in protected activity, and, two, the fact that Macy's allegedly failed to hire him as a result. The protected activity for both failure to hire claims occurred solely while Mr. Harrison was still employed by Macy's, both times. All right, well, see, I don't see how you still have an agreement, then, if you still think that that claim falls within the scope of the arbitration agreement, because my understanding is that Mr. Harrison says that that's outside of the scope of the arbitration agreement. Yes, the part of the dispute that we are stating that that falls within the scope of the arbitration agreement and should be compelled to arbitration if we were not waiving that. Yeah, I hear this discussion, and let me see if I understand it. My understanding of what—excuse me. I'll recover, I promise. My understanding of what you've said is we waive the arbitration agreement. We want to go back to the district court, but if for some reason the court does not accept the waiver, you disagree with the plaintiff about the law, and you think if we're going to decide the arbitration issue, we ought to decide that the retaliation claim is arbitrable. But what you'd really like is to waive the arbitration claim and go to the district court. That is exactly correct, Judge Hinkle. Have you made any motion here to waive arbitration? Yes, we did. We initially—there's a long history of briefing between this court and the district court. We initially did make a motion to try to waive it. It was kicked back to the district court. The district court kicked it back to you. In between all of this time, we were in discussions with plaintiffs to try to, again, try to waive arbitration, even though we disagreed with the law, but to try to waive arbitration. The plaintiff would never agree to waive arbitration, which is why we had to brief the legal issues, and it's why we're here today. Do you have the docket number for the motion here? Hold on one second. No, we do not. Sorry, we didn't print that out. It was one of the first briefings, though, that we filed with the 11th Circuit. It was kicked back to the district court. The 11th Circuit determined that they didn't have jurisdiction at the time, and so it was kicked back to the district court, and the district court kicked it back to the 11th Circuit to make the final determination on the legal issues. And the district court denied it in indicative ruling. Correct, yes. We filed a motion for indicative ruling, and the district court denied it, and that's why it came back up to the 11th Circuit. I'm sure you understand my concern that your client was very willing to engage in these legal issues with the plaintiff while he didn't have counsel, but perhaps once the client saw risk on appeal, it decided that it was no longer to its financial advantage. Could you see why we might have a hard time appearing to countenance that type of ganssmanship? But that was not our thought process at all. Our thought process was once it became apparent to us that some of his claims fell outside of the scope of the arbitration agreement, we only wanted to litigate in one forum. That was our thought process. It wasn't to try to out-game a pro se plaintiff. As we stated, when we initially filed the motion to compel arbitration in the district court, we assumed, as the district court did, again, to Judge Hinkle's point, due to the confusing nature of the pleading, that all of the claims fell within arbitration. Again, the district court agreed with us, but after further consideration and realizing that those claims, some claims did fall outside of the arbitration agreement, at that point, we decided, for sake of judicial efficiency, that we wanted to be in one forum. It had nothing to do with trying to out-game or trying to drag the pro se plaintiff through litigation. If that had been our motivation, we wouldn't have went to the pro se plaintiff to try to consent and try to waive our arbitration agreement so that we can remain in his forum of choice, which was at the district court level. All right. Thank you, Ms. Lyles. Thank you. Ms. McDonald, you've reserved some time for rebuttal. Thank you, Your Honor. First, let me say this was gamesmanship. It was gamesmanship throughout. The settlement negotiations were between myself and an attorney who has since withdrawn, and the offer was the first that Mr. Harrison or I ever heard that they believed that some claims did not fall within the scope of the arbitration agreement was when we received the opposition brief. That was never stated before. What was stated was, we want to keep the ruling that says that it's in our favor in the district court and we'll waive our rights. And so that left him in an untenable position where Macy's was saying, we want to have our cake and eat it too. I don't get that. Macy's was saying, we'll give you what you want. I don't understand why you didn't declare victory. What you wanted was a case in the district court. You didn't want to arbitrate. They said, okay, we'll give up on arbitration. Basically, I think we're being asked for an advisory opinion. Everybody wants to take this case to the district court. Nobody wants to arbitrate. But what it sounds like Mr. Harrison wants is an advisory opinion. He wants to hang a notch in the belt that he beat Macy's in the court of appeals. There are some procedural complications, which I attempted to discuss with opposing counsel, about how practically this would work. His case was dismissed. So it was not procedurally as simple as saying, oh, you can just proceed now. His case is gone. Okay, so what's wrong with this now? What's wrong with an opinion from this court in about two sentences that says, Macy's has waived the right to arbitrate. We vacate the district court order and remand to the district court for further proceedings. We do not object to that. If the underlying decision is vacated, we have no objection. We attempted to work this out with Macy's. We explained the procedural problems. And instead, they went and filed six motions, various motions. And so we did attempt to work this out. We would not have any opposition to vacation of the lower court order. And vacation was important to us because Macy's indicated that it would continue to push its arbitration agreement. While it might waive it right here, it was not ever going to concede until we saw this appellate brief that these claims were not covered by the arbitration agreement and that he was bound indefinitely into the future for any claim that might have anything to do with employment. Even if it was applied for, like, six years in the future, he applies for a job, Macy's position was, you're bound by that arbitration agreement. But now they've waived that. If it's vacated, we do not object. I did want to ask a question, and maybe it doesn't matter anymore. But there did seem to be some confusion about whether there was a claim that Mr. Harrison suffered an adverse action during his employment by the failure to extend his seasonal employment to permanent. Is that factual background in the complaint, or is that a stand-alone basis for a claim? The word promote does not appear anywhere in the complaint. He never alleged that he was failed to be promoted. He's very clear that he is suing for failure to hire him. In October 2016 and May 2017, he refers to his EEO complaints for background on that, and they themselves are specific about those two failures to hire. And if there were any debate, footnote 2 of our reply states that he did not assert those claims. So I'm not sure why that was discussed. That was my understanding coming in. Thank you. Thank you, Your Honor. Well, the case was well argued on both sides, and I note, Ms. McDonald, that you were appointed by the court to represent Mr. Harrison, and I'm going to ask Judge Bill Pryor whether the reason he appointed you is because you attended the best . . . you graduated from the best law school in the country, and you're from Pensacola. I'll ask him the question. Thank you. Court is adjourned.